ARNOLD et al., Appellants, v. CITY OF ST. LOUIS et al.

### Division Two, November 14, 1899.

1. **Negligence: POND IN STREET: SKATING ON ICE.** Plaintiffs sued for the loss of their children who were drowned while skating on a pond twenty feet deep situated in a street which extended onto the lot of a private citizen, who with the city is made defendant. The petition charged that the defendants had negligently suffered a large body of water to collect in said pond and remain there for more than a year previous to the accident without guard; that the pond was in the neighborhood of a public school which the children attended, and when frozen over was attractive to children of tender years, and to the deceased children of plaintiffs, who were drawn there for the purpose of skating upon the ice, and that on the day named the ice had formed on the pond "so that it was dangerous to go thereon," and the plaintiff's children and other children were attracted from said school to skate thereon; that it was well known to defendants that a large number of children were in the habit of skating upon said ice, and that the death of the children was caused by the negligence of the defendants in wrongfully permitting said pond to form in said street and on the adjoining land and to "remain thereon unguarded so that when it was frozen over it would attract children to skate thereon." *Held,* that the petition did not state a cause of action. That as the deceased children were not using the street at the time for the purpose of travel, the rule of law which requires municipalities to keep their streets in reasonably safe condition for the use of pedestrians does not apply. That as the children went on the ice to skate, and while skating thereon were drowned, the city was not negligent in permitting the pond to remain uninclosed and unguarded and hence could not be held to respond in damages for their death.

Arnold v. St. Louis.

2. ———: ———: ———: NUISANCE. The city could not be held upon the ground that the pond was a nuisance unless the petition alleged that the accident happened on that portion of the pond which was within the limits of the street.

3. ———: ———: ———: ———: ON LAND OF ANOTHER. A city can not be held liable for an injury occurring upon the land of a citizen who owns real estate abutting on its street, upon the theory that the place where the injury occurred was a nuisance and the city had failed to abate it. Nor can the citizen be held liable unless the injured persons were there by his permission or invitation, in the absence of which they were trespassers.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

MARTIN & BASS and T. J. ROWE for appellants.

(1) The city of St. Louis by suffering and permitting a pond to remain on its public highway was guilty of maintaining a nuisance, and is liable for any injury caused by such nuisance. (2) The defendant, Isabella Dawson, by suffering and permitting a pond to form on her premises adjoining a public highway, is liable for any injury caused by such pond. (3) "Unguarded premises supplied with dangerous attractions are regarded as holding out an implied invitation to children, which will make the owner of the premises liable for injuries to them, even though they be technical trespassers. Whether or not the dangerous premises were so attractive to children as to suggest the probability of the accident, and thus render the owner liable, is a question for the jury." City of Pekin v. McMahon, Adm'r, 154 Ill. 141; Lepnick v. Gaddis, 26 L. R. A. 686. (4) The owner of property abutting on a public highway is bound to keep his premises in a condition reasonably safe for the public who have occasion to travel on the highway. Busching v. Gas Light Co., 73 Mo. 220; Clark v. Famous Co., 16 Mo. App. 464; Kirkpatrick v. Knapp & Co., 28 Mo. App. 427. (5)

The city is bound to keep its streets in a condition safe for the public to travel thereon. Indianapolis v. Emmelman, 108 Ind. 530.

B. Schnurmacher and Chas. Claflin Allen for respondent City of St. Louis.

(1) Nowhere does the petition aver that Taylor avenue, between Margaretta and Kossuth avenues, is or was actually opened, or actually used for purposes of travel. Municipal corporations are not required to keep all of their streets in good repair, but only such as are necessary for the use of the traveling public, and which have been actually opened for travel. Bassett v. St. Joseph, 53 Mo. 290; Bremen v. St. Louis, 92 Mo. 482; Smith v. St. Joseph, 45 Mo. 449. Those not using the streets for purposes of travel can not complain of their condition. The liability of the corporation extends only to travelers injured therein. Kiley v. Kansas City, 87 Mo. 103; Russell v. Columbia, 74 Mo. 480; Bassett v. St. Joseph, 53 Mo. 290; Smith v. St. Joseph, 45 Mo. 449. (2) A city is not bound to guard its streets or bridges so as to prevent children from playing thereon and exposing themselves to danger, and is not liable for injuries which may be thus received. Schauf's Adm'r v. City of Paducah, 50 S. W. Rep. 42; Dehanitz v. St. Paul, 4 Am. Neg. Rep. 655; Gavin v. Chicago, 97 Ill. 66. (3) The existence of the pond was not the proximate cause of the accident, and therefore the city is not liable. Dillon's Mun. Corps., sec. 1007; Butz v. Cavanaugh, 137 Mo. 503. The proximate causes, as shown by the petition itself, were the weakness of the ice, and the act of the deceased children—thirteen and fourteen years old respectively—in voluntarily going thereon to skate. (4) The petition does not allege that the accident occurred upon that portion of the pond located in the street. (5) If it occurred on the Dawson property the city was not liable, because a municipal corporation is not liable for its failure to abate

a nuisance on private property. Harmon v. St. Louis, 137 Mo. 494; Butz v. Cavanaugh, 137 Mo. 503; Moran v. Pullman Palace Car Co., 134 Mo. 641; Witte v. Stifel, 126 Mo. 295; Overholt v. Vieths, 93 Mo. 423.

L. FRANK OTTOFY for respondent Isabella Dawson.

(1)  The owner of real estate is not liable in damages to a trespasser who falls into an excavation thereon but only to one lawfully passing along the street who is accidentlly injured while lawfully using the public highway as a traveler. Overholt v. Vieths, 93 Mo. 422; Witte v. Stifel, 126 Mo. 295; Barney v. Railroad, 126 Mo. 372; Moran v. Pullman P. C. Co., 134 Mo. 641; Butz v. Cavanaugh, 137 Mo. 503; Heckler v. St. Louis, 13 Mo. App. 277; Richards v. Connell, 45 Neb. 467; Gillespie v. McGowan, 100 Pa. St. 144; Klix v. Nieman, 68 Wis. 271; Charlebois v. Railroad, 91 Mich. 59; Greene v. Linton, 27 N. Y. Sup. Rep. 891; Clark v. Manchester, 62 N. H. 577; O'Connor v. Railroad, 44 La. Ann. 339; McGuiness v. Butler, 159 Mass. 233; Benson v. Baltimore Traction Co., 77 Md. 535.   (2)  The allegation of the petition that at the time of the accident "the ice on said pond was so thin that it was dangerous to go thereon," is sufficient to sustain the demurrer.   This was the proximate cause of the accident, and it is held, regardless of other considerations, that children thirteen and fourteen years of age are held guilty of contributory negligence under such circumstances. Butz v. Cavanaugh, 137 Mo. 512.

BURGESS, J.—This is an action by plaintiffs, who were at the time of the injury complained of, husband and wife, and as such prosecute this suit to recover from defendants, the city of St. Louis and Isabella Dawson, the sum of $10,000 damages for the death of their two minor children, Arthur James Arnold and Amanda Mary Arnold, who were drowned in the city of St. Louis, on the twelfth day of January, 1897,

while skating upon the ice which had formed upon a pond of water, which it is alleged had formed upon a portion of Taylor avenue, one of the public streets in said city, between Margaretta and Kossuth avenues, and upon land of the defendant, Isabella Dawson, abutting the west side of said Taylor avenue.

The petition is in two counts. The first is to recover $5,000 on account of the death of the boy, and the second is to recover the same amount on account of the death of the girl. This is the only material difference between the two counts. They both aver that the children were minors and unmarried; that the city of St. Louis is and was a municipal corporation; that Taylor avenue, between Margaretta and Kossuth avenues, is a public highway, and that defendant Isabella Dawson at the times mentioned in the petition was the owner of certain real estate fronting on the west side of Taylor avenue between the streets mentioned; and that on January 12, 1897, and for a long time prior thereto the defendants carelessly, negligently, wrongfully and unlawfully suffered and permitted a large body of water, two hundred feet long, one hundred feet wide and twenty feet deep, to collect and remain on the above portion of Taylor avenue and on the real estate of defendant Dawson. That said body of water had collected and remained on said street and said premises for more than a year prior to January 12, 1897, which fact was well known to the defendant city, and that it was the duty of said defendant to so guard said body of water that it would not be dangerous to the public.

The petition further alleges that the water so collected was in the vicinity of the Ashland school, one of the public schools of the city of St. Louis, and that when frozen over it was attractive to children of tender years, and to the deceased children of plaintiffs, who were drawn there for the purpose of skating upon the ice. That upon the day just named

ice had formed upon the pond, attracting children from said school, and other children to skate thereon "and that the ice on said pond was so thin that it was dangerous to go thereon." The petition proceeds to allege that on January 12, 1897, the children of plaintiffs, attracted as aforesaid, went upon the pond to skate; and the ice broke, and that they were immediately drowned.

It is also averred in each of said counts that the fact that a large number of children were in the habit of skating upon said ice was well known to defendants, and that the death of the children was caused ",by the carelessness and the negligence and wrongful action of the defendants in wrongfully suffering and permitting said pond to form on said Taylor avenue and said real estate above and heretofore described herein and to remain thereon unguarded so that when it was frozen over it would attract children to skate thereon."

To this petition each of the defendants filed a general demurrer, on the ground that the same does not contain facts sufficient to constitute a cause of action; which demurrers were sustained by the court. Plaintiffs declining to plead further final judgment was entered in favor of defendants on the demurrers and plaintiffs brought the case to this court by appeal.

The petition shows very conclusively that the action is not based upon the ground that Arthur James Arnold and Amanda Mary Arnold were travelers upon the street of defendant city, and that by reason of its unsafe condition it was dangerous to persons passing along and upon it in consequence of which they were drowned, but upon the ground that the pond when covered with ice was attractive to children, so that as deceased were not using the street at the time of the accident for the purpose of travel, the rule of law which requires municipalities to keep their streets in a reasonably safe condition for that purpose does not govern in this case, for the city owed them no such duty.   [Smith v. St. Joseph, 45

Mo. 449; Bassett v. St. Joseph, 53 Mo. 290; Russell v. Columbia, 74 Mo. 480; Kiley v. Kansas City, 87 Mo. 103; Brennan v. St. Louis, 92 Mo. 482.]

At Taylor avenue, where the accident occurred, it seems that the water covered the street to the depth of twenty feet, and that the children went upon the ice, which had accumulated over it on the pond, and were skating thereon, in consequence of which they were drowned; so that unless the city was negligent in permitting the pond to remain in its uninclosed or unguarded condition, it can not be held to respond in damages in consequence of the death of the children.

In the case of Schauf's Adm'r v. City of Paducah, 50 S. W. Rep. 42, there was a pond in the commons of the city, some distance from any highway, and while plaintiff's son about seven years of age was crossing the commons, he caught a bird, and seeing some children fishing at the pond, he went over to where they were. The bird got away from him and fluttered out into the water, and he waded out after it, and in doing so ventured too far and got over his depth and was drowned. It was ruled that the city was not liable. The court said: "Accumulations of water are common about all cities, especially river towns. A large part of the farm houses of this State have ponds about them. The city was under the same obligation as any other lot owner, and no more. The child did not lose his life from the dangerous proximity of the pond to a highway, or from any secret danger, such as a great depth of water near the bank, but from his voluntarily wading out in the pond some ten feet, after the bird. It was not the duty of the city to provide against such a contingency as this. In Gillespie v. McGowan, 100 Pa. St. 144, a boy, eight years old, while fishing in a well in an old brickyard, fell in it and was drowned—a stronger case for the plaintiff than we have here —yet it was held there could be no recovery. The court said: 'We are unable to see anything in this case to charge the defendants with negligence in not inclosing their lot or guarding

the well.    There was no concealed trap or deadfall, as in Hydraulic Works Co. v. Orr, 83 Pa. St. 332.    The well was open and visible to the eye.    No one was likely to walk into it by day, and this accident did not occur at night.    A boy playing upon its edge might fall in, just as he might in any pond or stream of water.    In this respect the well was no more dangerous than the river front on both sides of the city, where boys of all ages congregate in large numbers for fishing and other amusements.    Vacant brickyards and open lots exist on all sides of the city.    There are streams and pools of water where children may be drowned; there are inequalities of surface where they may be injured.    To compel the owners of such property to inclose it, or fill up their ponds, and level the surface, so that trespassers may not be injured, would be an oppressive rule.    The law does not require us to enforce any such principle, even where the trespassers are children.    We all know that boys of eight years of age indulge in athletic sports.    They fish, shoot, swim, and climb trees.    All of these amusements are attended with danger, and accidents frequently occur.    It is part of a boy's nature to trespass, especially where there is tempting fruit; yet I never heard that it was the duty of the owner of a fruit tree to cut it down because a boy trespasser may fall from its branches.    Yet the principle contended for by the plaintiff would bring us to this absurdity if carried to its logical conclusion.    Moveover, it would charge the duty of protection of children upon every member of the community except their parents."

In Dehanitz v. The City of St. Paul, 4 Am. Neg. Rep. 655, there was within the city of St. Paul a slough which, during high water in the Mississippi river, filled with water and had no outlet.    The streets in this part of the city were dedicated to the public, but never, by the city, opened, kept or used, although the tract was an open common.    In this slough was an open basin sixty to seventy-five feet across,

which was contiguous to James street.    For a long time the city had used this hollow basin as a place for dumping garbage and manure, which during high-water floats upon the water, and forms a crust, upon which grows vegetation similar to that upon surrounding land.    The plaintiff's intestate, a girl ten years old, left James street, upon which she had been traveling, and either for convenience or pleasure attempted to cross over this crust on her way to a packing house, one-fourth of a mile distant, when the crust broke, and she fell into the water and was drowned.    It was not alleged in the petition that the public had ever traveled over this dumping ground, or used it as an open common.    It was held on demurrer to the petition, that the city owed no duty of protection or warning in respect to the girl going upon this dumping ground or crust as a traveler, and hence was not liable in damages for her death.

The principle announced in these cases seems to be decisive of the case in hand, for although the petition avers that Taylor avenue, between Margaretta and Kossuth avenues, is a public highway, which implies that it was open to the use of the public, the subsequent allegations that it was covered with water twenty feet deep, shows that it was impossible that it could have been used for such a purpose.

The act of the children in venturing upon the ice was entirely voluntary upon their part, and is wholly unlike that class of cases where a person, traveling with proper care upon a sidewalk in a city, and by reason of its defective condition, or its proximity to some hole or dangerous place, falls and is injured, for in such case the city will be held to respond in damages for the injury, upon the ground that as to such persons it is bound to keep its sidewalks in a reasonably safe condition for pedestrians both by day and by night, while as to persons not using its sidewalks for the purposes for which they are intended, for instance skating upon ice formed thereon on a pound twenty feet deep, it owes no such duty.

Plaintiffs, however, rely upon Lepnick v. Gaddis, 72 Miss. 200, as supporting their contention. In that case Gaddis owned a lot at the intersection of two streets. A storehouse which stood thereon was burned down some years before the accident, leaving an uncovered cistern on the vacant lot. It was alleged in the petition that by the invitation and by the license of the defendant, the public in passing from street to street crossed over his lot by two commonly traveled paths, which became well defined, and each of which ran near by the cistern. It was also alleged, "that, during the winter of 1893, plaintiff, a stranger, while carefully using the highway, the night being dark, rainy and cloudy, and there being nothing to show where the highway ended and the vacant lot began, strayed therefrom, and whilst so bewildered and lost, fell into said cistern and was injured. Held upon demurrer to the petition that it stated a good cause of action. It will be obvious that there is a very material difference between the facts in that case, and in the one in hand, in this—in that case the injured party did not knowingly and voluntarily enter a place of danger, while in the case in hand they did.

City of Indianapolis v. Emmelman, 108 Ind. 530, is another case relied upon by plaintiff. In that case the defendant city while constructing a bridge, made an excavation in the bed of a shallow stream where it was crossed by a street, and constructed a levee from the bank to the excavation, and, knowing that the children of persons residing near were accustomed to play in the vicinity, left it, in the absence of workmen, without safeguards of any kind, by reason of which a child, five years of age while at play, without any fault on the part of its parents, fell into the excavation and was drowned. It was held that the city was liable. But that case, it will be seen, was bottomed upon the negligent act of the city in digging a hole in the street in which water accumulated, and into which plaintiff's child fell and was drowned.

City of Pekin v. McMahon, 154 Ill. 141, is another case relied upon by plaintiffs. That was an action against the city as the owner of land next to one of its streets, upon which land there was a deep hole or pit in which water had accumulated, and upon which floated logs and planks, which was alleged to be a source of attraction to children in the locality, who resorted there to play. Plaintiff's child, eight years of age, while so engaged was drowned and it was held that plaintiff might recover. But that case is not in line with the rulings of this court in Overholt v. Vieths, 93 Mo. 422; Witte v. Stifel, 126 Mo. 295; and Butz v. Cavanaugh, 137 Mo. 503. In the case last cited it was held that the owner of land was not responsible for injuries sustained by a boy twelve years of age who voluntarily went into an excavation on private property near a street and burned his feet in a smouldering fire therein.

The petition does not allege that the accident happened in that portion of the pond which is located in the street, which was absolutely necessary in order to hold the city upon the ground that the pond was a nuisance. And if the accident happened upon that portion of the pond located upon the land of Isabella Dawson, the city can not be held liable for an injury occurring upon the land of another, upon the ground that the place where it occurs is a nuisance, and that the city had failed to abate it. [Moran v. Pullman Palace Car Co., 134 Mo. 641; Harmon v. St. Louis, 137 Mo. 494.]

As to the defendant Isabella Dawson, if the children were drowned upon that part of the pond which is upon her land, there is nothing in the petition which tends to show that they were there by her permission or invitation, in the absence of which it must be inferred that they were trespassers and their representatives without remedy against her. [Witte v. Stifel, *supra*; Moran v. Pulman Palace Car Co., *supra*; Overholt v. Vieths, *supra*; Butz v. Cavanaugh, *supra*.]

For these considerations we affirm the judgment. GANTT, P. J., concurs; SHERWOOD, J., absent.